IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

|
|
MARIETTA COURET,                              |
|    Case No.:   1:16-cv-22702
        Plaintiff,                            |
|
vs.                                           |
|
BELLSOUTH TELECOMMUNICATIONS,                 |
LLC, d/b/a AT&T FLORIDA, and                  |
AT&T CORP d/b/a AT&T, INC.,                    |
|
        Defendants.                           |
_____     |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MARIETTA COURET (Plaintiff or COURET), by and through her undersigned attorneys, hereby files this Complaint against BELLSOUTH TELECOMMUNICATIONS, LLC, d/b/a AT&T Florida, and AT&T CORP., d/b/a AT&T, INC., (jointly referred to hereafter as Defendant or AT&T), seeking monetary damages, attorney's fees, costs and other relief allowable under the law.

## NATURE OF ACTION

1.     This is an action brought by COURET against AT&T for discrimination in employment based on her disability in violation of Title I of the Americans with Disabilities Act, as amended 42 U.S.C. 12101 (the "ADA"), and Chapter 760 of the Florida Civil Rights Act of 1992, as amended ("FCRA"); and based on Defendant's violation of the Family and Medical Leave Act, 29 U.S.C. § 2611, et. seq. (the "FMLA").

1

**JURISDICTION AND VENUE**

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.  This action is authorized and instituted pursuant to 107 of the ADA, 42 U.S.C. § 12101, et seq. and 12117(a), and 29 U.S.C. § 2615(a) as the matter involves federal questions.   Further, this is an action for damages exceeding $75,000.00, exclusive of costs, interest and attorney's fees.  This court has supplemental jurisdiction over the Plaintiff's FCRA claims pursuant to 28 USC 1367.

3.      Venue in proper in this district pursuant to 28 USC § 1391(b)(2) because all events giving rise to Plaintiff's claims occurred in the Southern District of Florida.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4.      The Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and Florida Commission on Human Relations on February 9, 2016 and an Amended Charge on February 19, 2016 claiming disability discrimination and retaliation.   On March 31, 2016 Plaintiff received a Notice of Right to Sue from the EEOC permitting this filing. (Exhibit A).

**PARTIES**

5.      Plaintiff, MARIETT COURET, is a resident of Miami-Dade County, Florida, and is otherwise sui juris.

6.      Defendant BellSouth Telecommunications, LLC ("BellSouth") is a limited liability company organized under the laws of the State of Georgia on July 1, 2011.   BellSouth Telecommunications, LLC is a subsidiary and operating company of Defendant AT&T INC. serving the Southeastern United States, and specifically Florida under the name of AT&T Florida. Specifically, it has offices located throughout Florida, including Miami, Florida.

7.      Defendant AT&T INC., is a Delaware corporation and the parent company of Bellsouth Telecommunications, LLC, conducting business in Florida, including Miami, Florida as

Bellsouth Telecommunications, LLC and Defendant AT&T CORP, which is also a Delaware Corporation authorized to conduct business in the State of Florida

8.     Defendant Bellsouth Telecommunications, LLC, Defendant AT&T CORP and AT&T, INC. (hereafter Defendant or AT&T) share centralized control of labor relations, common ownership and financial control, and common functional operations, including succession planning, training and development, employee health and disability benefits, employee retirement benefits, CEO compensation and employee engagement.

9.     At all relevant times, AT&T was a covered entity and/or employer in an industry affecting commerce, employing more than 15 employees for purposes of the applicability of the ADA and FCRA, and more than 50 employees for purposes of the applicability of the FMLA.

10.     At all relevant times, COURET was employed by AT&T as a Sales Associate and therefore an employee within the meaning of the ADA, FCRA, and the FMLA.

## COMMON FACTUAL ALLEGATIONS

11.     On or about April 1, 2008 COURET was hired by AT&T into the position of Sales Associate at its Miami Call Center.

12.     Call Center Sales Associates, like COURET, were essentially customer service representatives responsible for answering customer calls, identifying their needs and making recommendations based on their knowledge of AT&T'S products.

13.     A Call Center Sales Coach (Coach) was considered a first-level manager responsible for overseeing Sales Associates, primarily monitoring their sales and providing feedback, coaching, motivation and support on meeting assigned sales objectives; ensuring the Sales Associates were properly trained and remained  knowledgeable of AT&T'S products and services; issuing discipline and making suggestions and recommendations regarding advancement, promotion, firing and other status changes for the employees working under their supervision.

14.     The Call Center Manager was responsible for overseeing the entire Center, including monitoring and meeting the Center's sales objectives, managing the Coaches and assigning Sales Associates to respective Coaches.  Raymond Aleman was the Center Manager for the Miami Call Center where COURET worked between 2011 through roughly May, 2016.

15.     At all relevant times, AT&T generated sales objectives for each Call Center, including the Miami Call Center.   Although the sales objectives could fluctuate per month, each Sales Associate was assigned the same monthly sales objective.

16.     AT&T tracked the sales figures of its Sales Associates, including COURET, on a monthly scorecard, with their scores being "rolled up", or attributed, to their assigned Coaches. Similarly, the monthly scorecard for each Coach was used to calculate their supervisors scorecard and ultimately the overall sales for the Call Center.   AT&T'S policies provided for commissions and bonuses for achieving sales objectives; as well as subjected the Sales Associates, Coaches and Managers to discipline for failing to achieve the sales objectives.

17.     At all relevant times, the job performance rankings for Sales Associates, Coaches and Managers were directly tied to performance metrics in several categories creating a reason to target those individuals perceived as negatively impacting the rankings of those holding a higher rank, and the Call Center in general.

18.     AT&T had a policy against decreasing the Coaches' monthly sales quota when his or her Sales Associates, like COURET, were out on approved intermittent leave due to their disability.  As such, the Coach faced discipline for failing to meet the established sales quotas unless the remaining Sales Associates were are able to cover the sales objectives of the absent associate.

19. AT&T also had a policy of counting approved medical leaves of absences against its Call Centers, lowering their overall performance rating and ranking, which resulted in fewer classes of new employees hired, with the underlying impact being the eventual closure of the Call Center, for failing to meet "utilization".

20. As a result of AT&T's policies, the managers at the Miami Call Center, including Center Manager Aleman, fostered the belief that intermittent disability leave, whether FMLA protected or an ADA accommodation, resulted in lower sales numbers, was harmful to the company, could result in the closure of the Call Center and should be considered as a negative factor against the employee.

21. Disabled employees using such leave were considered "abusers", as someone "stealing company time" and who should be targeted for discipline under the progressive disciplinary policy until terminated; or until forced to take a leave of absence from work under AT&T'S Short Term Disability Leave Program, which removed the disabled employee from Miami Call Center's sales quotas, thus no longer impacting the sales objectives of that person's supervisors, or the Call Center in general.

22. In that regard, at the Miami Call Center, Raymond Aleman rewarded Coaches and Managers with "comp days", or paid days off, in exchange for disciplining disabled employees using leave time, whom he viewed as having "attendance problems" because they missed too much work.

23. COURET was diagnosed with severe depression, depressive disorder, stress and anxiety disorder while employed with AT&T.

24. At all relevant times, AT&T had a zero tolerance attendance policy and did not offer earned sick leave, requiring Sales Associates, like COURET, to use vacation days when they

were ill or had to take time off due to their disability, utilize FMLA or apply for Short Term Disability Leave.

25.     COURET applied for FMLA benefits around March 12, 2013 due to her medical condition, requesting that she be approved for intermittent leave, up to 8 days off per month, as necessary, due to her disability.   Her treating medical provider submitted the requisite certification to the Defendant confirming the intermittent leave request.    A recertification was submitted by COURET'S medical providers every six months thereafter, as mandated by AT&T evidencing her continued need for intermittent FMLA.

26.     COURET received notification from Defendant's FMLA Department that her intermittent leave requests were granted.

27.     COURET subsequently used intermittent leave due to her qualifying medical condition.

28.     After utilizing the intermittent leave under FMLA, COURET began to be treated differently. She was ultimately subjected to a constant barrage of criticism regarding her conduct during sales calls; something that she had not experienced before notifying the Defendant of her disability and using FMLA, even though her conduct had not changed; and commonly called into meetings to discuss poor performance being advised she needed to improve or she would be disciplined.

29.     COURET's calls were constantly listened to for mistakes and she was often micromanaged about her calls, between March, 2013 and May, 2014, inclusive of having Coaches standing over her while she made sales calls, something believed to be done to intimidate her so that she made mistakes.

30.     According to Patricia Thomas and Enderson Joseph, two of the other Sales Coaches at the time, Aleman commonly directed Coaches to listen to the calls of those employees with disabilities that were using FMLA or disability job accommodations in order to find a basis to discipline them, with the end goal being a justification for termination.

31.     On or about May 22, 2014 COURET applied for leave under FMLA due to the ongoing practices identified above, which had caused her a significant amount of stress, anxiety and depression rendering her unable to work.

32.     AT&T approved COURET for disability leave under FMLA and, upon information and belief, its Short Term Disability Leave policy.

33.     On or about July 22, 2014 COURET returned to work from FMLA/STDL and was immediately targeted by the managerial staff at the Miami Call Center in the same manner she had been treated prior to taking leave, inclusive of being micromanaged on her calls, having a higher ratio of her calls evaluated by Coaches, being removed from sales calls to attend meetings, and having Coaches stand over her while she made sales calls, particularly Coach Simon Boyer. Further, she was treated less favorably than non-FMLA using disabled employees in regard to the sales calls she received and the assistance provided in order to improve her sales figures.   Further, she was ridiculed pertaining to her conduct during sales calls.  All of this conduct was different than she had experienced before requesting FMLA and using disability leave.

34.     COURET also received a number of disciplinary actions after her return from FMLA/STDL.   On November 10, 2014 she received a counseling for unsatisfactory job performance.  On December 12, 2014 COURET was issued another counseling for unsatisfactory performance due to failing to meet her sales objectives.  On February 25, 2015 she received a warning for unsatisfactory performance.

35.     On or about March 18, 2015 COURET complained to AT&T's EEO department that she was experiencing differential treatment and being harassment after using FMLA.   She identified various treatment at the hands of Raymond Aleman, Miami Center Director and other Sales Coaches against herself and other FMLA using employees, including yelling, profanity, belittling comments, having her calls unfairly critiqued and being threatened with discipline.

36.     On April 16, 2015 COURET received a Letter in Lieu of Suspension for unsatisfactory performance.

37.     On April 17, 2015, COURET participated in the submission of a group complaint to Randall Stephenson, Jody Garcia, and a variety of other top level managers for AT&T regarding ongoing discrimination and retaliation at the Miami Call Center.   The complaint described "constant harassment coming from upper management…" related to having taken FMLA or having a job accommodation.   The complaint went onto assert that they were being unfairly disciplined for failing to meet sales objectives that were not reduced for time that was missed due to their respective disabilities while, others that did not have disabilities were provided with adjustments.   They further complained that Coaches refused to provide them with the same training and assistance as provided to employees without a history of FMLA or disabilities; that they were commonly berated in front of other employees, stood over in an intimidating way and at other times ignored when they asked for assistance.

38.     Seemingly in response to the group complaint District Manger Sheila Morgan held a meeting at the Miami Call Center, telling the group that there was *no excuse for not coming to work* and that AT&T would not "hold the door open for those employees".  COURET understood the statement to be a threat that she should stop complaining, and come to work regardless of her disabilities or any medical treatment necessitated by her disability.

39.     COURET used intermittent leave under FMLA between August, 2014, and April, 2015, in large part because of harassment she was subjected to at the Miami Call Center which caused, and was intended to cause, exacerbations of her stress, anxiety, depression and other mental health conditions.

40.     COURET'S health continued to deteriorate due to the working environment and on or about May 20, 2015 she requested and was approved for Short Term Disability Leave due to her mental health condition.  She returned to work on or about June 16, 2016.

41.     Prior to notifying AT&T about her disability, and utilizing FMLA Plaintiff was considered a productive worker, routinely being praised for meeting her sales goals.

42.     It is upon information and belief that Aleman and the Sales Coaches intentionally targeted COURET creating an environment so hostile that she would be unable to achieve her sales objectives so that disciplinary actions could be initiated against her with the goal toward termination, or having her take time off under AT&T's  Short Term Disability Leave policy which would remove her from the Miami Call Center's sales objective, and  thus no longer impact the sales figures of her Coaches, the Center Manager and the Miami Call Center.

43.     Under AT&T's Short Term Disability Leave policies, Sales Associates, like COURET, are paid their full hourly rate for the first 12 weeks, thereafter through the duration of leave, they are paid 50% of their hourly rate.     COURET was compensated consistent with this program.

44.     Under AT&T's progressive discipline system, employees such as COURET, were first issued a "counseling", then a "warning", with a "letter in lieu of suspension" being the final step before "termination".

45.     According to several current and former Coaches of the Miami Call Center, including Patricia Thomas and Enderson Joseph, they were directed to target Sales Associates, like COURET, who missed work under FMLA and AT&T's Short Term Disability Leave policy due to their disabilities, because of the impact their failure to attend work had on the sales objectives of the Call Center, Center Manager, Coaches and other supervisors.

46.     Further, at all relevant times, Aleman, commonly stated that Sales Associates, such as COURET with disabilities using FMLA or STDL were stealing time from AT&T and did not want to work.   According to both Thomas and Joseph, Alemon directed them to discipline employees at the facility for taking time off under FMLA and for missing "too much time" from work due to health related issues, including COURET.

47.     According to the Coaches, they were pressured by their supervisors to find or create a basis to discipline and terminate Sales Associates, like COURET, who missed work due to their disabilities by using FMLA or disability leave, or to target them with harassing conduct so that they were forced to take short term disability leave, which would remove them from the Miami Call Center sales quotas.  In that regard, Coaches were directed to:

      a.     listen to a higher ratio of their sales calls in order to find mistakes;

      b.     evaluate their sales calls in a harsher manner than non-disabled;

      c.     stand over them while they were on sales calls and use other forms of intimidation or distraction while they were on sales calls in order to prompt mistakes;

      d.     refuse to provide Coaching or assistance to them in order to help improve their sales figures; and

      e.     refuse to provide training on new policies or products, especially after returning from a lengthy leave and;

      f.     enforce AT&T policies in a disparate manner than those without disabilities.

10

48.     Further, according to the Coaches, the use of FMLA or disability leave was also considered a negative factor for promotional decisions.

49.     Many Coaches, including Thomas and Joseph were forced to either target Sales Associates who missed work due to their disabilities or face discipline and termination themselves.

50.     One way Coaches were pressured into complying with the directive to target and discipline the disabled employees on their team was to "assign" them even more disabled employees with intermittent leave; with the intention to leave the Coach with no choice but to view the scenario as a "them or me" situation.   According to Thomas, Aleman commonly made the non-compliant Coaches pick their "trophies" from an actual trophy he brought to the Call Center. Essentially, the name of each disabled employee using intermittent leave as a reasonable accommodation, was written on a piece of paper and placed in the trophy, and the Coach was required to pick names from the trophy to add to their team.   According to Aleman, the Coach could either find something to write the disabled employee up for or be disciplined themselves for failing to meet their sales objectives.

51.     It is alleged upon information and belief that AT&T was aware that its managers at the Miami Call Center and throughout the country were targeting disabled employees using FMLA through the issuance of discipline under the progressive disciplinary system, failing to provide assistance, training and other reasonable accommodations that would assist the disabled employees in meeting assigned sales objectives; refusing to modify the sales objectives for disabled employees using FMLA whereas others not similarly situated were provided such reductions, and considered them to be abusing AT&T's zero absence attendance policy by using federally protected leave.

**COUNT I –   DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 USC § 12101, ET. SEQ.**

52.     Plaintiff incorporates by reference paragraphs One (1) through Fifty-One (51) as if fully set forth herein.

53.     At all relevant times, Plaintiff was an individual with a disability within the meaning of the Americans with Disabilities Act, 42 USC § 12102(2).

54.     Specifically, Plaintiff had a mental impairment which is a handicap and/or disability as that term is defined under the ADA.

55.     The Plaintiff's mental impairment substantially limited a major life activity, without taking mitigating measures into account.

56.     At all relevant times, the Defendant regarding the Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

57.     At all relevant times, the Plaintiff was a qualified individual with a disability, able to perform the essential functions of her job.

58.     The Defendant is an employer as that term is defined under the ADA.

59.     Defendant has an unwritten policy of targeting individuals with disabilities using FMLA or leave under its Short Term Disability Leave policy, for termination through:

   a.     inequitably enforcing policies against the disabled/FMLA;

   b.     failing to allow reductions of sales objectives while affording others outside the protected class such a reduction;

   c.     refusing to provide the same training on new products, policies and procedure, particularly after returning from leave;

   d.     refusing to provide Coaching or other assistance in order to assist in improving or   increasing sales in order to meet sales objectives

   e.     intentionally listening to a higher ratio of their calls in order to identify mistakes resulting in discipline;

      f.     the issuance of harsher discipline than others outside the protected categories;

      g.     intentionally targeting those with intermittent leave by creating an environment so hostile so as to force the employee "off the books" either through voluntary termination or onto Short Term Disability Leave, something that removed them from the Miami Call Center's sales objective, and  thus no longer impact their sales figures and those of the Center.

60.     COURET was subjected to all of the aforementioned conduct.

61.     All of the aforementioned was intended to, or had the effect of creating a hostile work environment for COURET, one designed to result in her departure from the work environment, either due to termination or through taking time off under the Short Term Disability Leave program.

62.     Defendant's written and unwritten policies encouraged management to target disabled employees and/or employees that utilized disability leave and accommodations, based upon its position that employees should not take such protected time off, and that doing so, negatively impacted the Defendants sales.

63.     The Plaintiff's disability was either a motivating factor or a determinative factor in Defendant's conduct towards her.

64.     The Defendant treated other similarly situated employees who were not disabled more favorably.

65.     The Plaintiff was subjected to unwelcome harassment based on and because of her qualified disability.

66.     The Defendants conduct was intended to cause severe reactions and did cause COURET's disabilities to become symptomatic, negatively impacting her ability to work.

67.     The Defendants conduct was intended to result in Plaintiff's decision to leave her employment or be terminated.

68.     The Defendants conduct amounted to harassment which was sufficiently severe or pervasive so as to alter the terms and conditions of COURET'S employment and create a discriminatorily abusive and hostile working environment.

69.     A reasonable person would objectively find the work environment COURET was subjected to as hostile or abusive.

70.     COURET subjectively believed the work environment she was subjected to as hostile and abusive.

71.     The Defendant is either vicariously responsible for the hostile work environment created at the Miami Call Center, or directly liable.

72.     The Defendant violated the ADA in discriminating against COURET by creating a hostile work environment.

73.     The Defendant's stated reasons for its adverse actions were pretext for its substantial motivating factor of discriminating against the Plaintiff due to her disabilities.

74.     As a result of the Defendant's violations, the Plaintiff has suffered damages including severe emotional distress and economic losses.

75.     The Defendant has failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination form the work place and to prevent it from occurring.

76.     As a direct and proximate result of the Defendant's willful knowing and intentional discrimination, the Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress and mental anguish; the Plaintiff has incurred and will continue to

incur medical expenses for treatment by health care professionals and for other incidental expenses. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

77.     The Plaintiff seeks an award of general and compensatory damages, reinstatement or front pay, back pay and prejudgment interest.  Additionally, the Plaintiff is entitled to punitive damages for the Defendant's reckless indifference and disregard of her federally protected rights.

78.     As a further direct and proximate result of the Defendant's violation the Plaintiff has been compelled to retain the services of undersigned counsel.  The Plaintiff will incur and continued to incur reasonable attorney's fees and costs and therefore requests that her attorney fees be awarded pursuant to the ADA.

**WHEREFORE** the Plaintiff prays that judgment be entered in her favor against the Defendant as follows: that the Plaintiff be awarded general and compensatory damages, front-pay or reinstatement, back pay and prejudgment interest; that the Plaintiff be awarded reasonable attorney's fees, costs and other such relief as allowed under federal statute and that the Court deems just and proper.

**COUNT II-   RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 USC § 12101, ET. SEQ.**

79.     Plaintiff incorporates by reference paragraphs One (1) through Fifty-One (51) as if fully set forth herein.

80.     The Plaintiff engaged in protected activity when she complained about the treatment she was being subjected to by her supervisors due to her disability, including on March 18, 2015, and April 17, 2015.

81.     After complaining, the Plaintiff was retaliated against by being subjected to adverse employment actions constituting a serious and material change in the terms, conditions or privileges of her employment, including but not limited to:

      a.     being denied Coaching in order to improve her sales figures;

      b.     being issued disciplinary actions for sales performance after being denied Coaching;

      c.     being subjected to unwelcome harassment which included but was not limited to isolation, ridicule, disparate treatment as a result of her managers listening to a higher ratio of her sales calls in order to find mistakes, and being disciplined for sales performance others doing the same thing were not disciplined for doing;

      d.     failing to allow reductions of sales objectives while affording others outside the protected class such a reduction;

82.     The protected activity was the but for cause of the harassment and the causal link between the protected expression and the adverse actions; and there is no justifiable reason for the aforesaid conduct.

83.     The retaliatory harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment.

84.     The Defendant treated other similarly situated employees who were not disabled and who had not complained about disparate treatment more favorably.

85.     The Defendant has failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate retaliation form the work place and to prevent it from occurring.

86.     As a direct and proximate result of the Defendant's willful knowing and intentional retaliation, the Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress and mental anguish; the Plaintiff has incurred and will continue to incur medical expenses for treatment by health care professionals and for other incidental expenses;

Plaintiff has suffered and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

87.     The Plaintiff seeks an award of general and compensatory damages, reinstatement or front pay, back pay and prejudgment interest.  Additionally, the Plaintiff is entitled to punitive damages for the Defendant's reckless indifference and disregard of her federally protected rights.

88.     As a further direct and proximate result of the Defendant's violation the Plaintiff has been compelled to retain the services of undersigned counsel.  The Plaintiff will incur and continued to incur reasonable attorney's fees and costs and therefore requests that her attorney fees be awarded pursuant to the ADA.

**WHEREFORE** the Plaintiff prays that judgment be entered in her favor against the Defendant as follows: that the Plaintiff be awarded general and compensatory damages, front-pay or reinstatement, back pay and prejudgment interest; that the Plaintiff be awarded reasonable attorney's fees, costs and other such relief as allowed under federal statute and that the Court deems just and proper.

## COUNT III – DISABILITY DISCRIMINATION IN VIOLATION OF FLORIDA CIVIL RIGHTS ACT

89.     Plaintiff incorporates by reference paragraphs One (1) through Fifty-One (51) as if fully set forth herein.

90.     At all relevant times, Plaintiff was an individual with a disability within the meaning of the FCRA.

91.     Specifically, Plaintiff had a mental impairment which is a handicap and/or disability as that term is defined under the FCRA.

92.     The Plaintiff's mental impairment substantially limited a major life activity, without taking mitigating measures into account.

93.     At all relevant times, the Defendant regarding the Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

94.     At all relevant times, the Plaintiff was a qualified individual with a disability, able to perform the essential functions of her job.

95.     The Defendant is an employer as that term is defined under the FCRA.

96.     Defendant has an unwritten policy of targeting individuals with disabilities using FMLA or leave under its Short Term Disability Leave policy, for termination through:

   a.     inequitably enforcing policies against the disabled/FMLA;

   b.     failing to allow reductions of sales objectives while affording others outside the protected class such a reduction;

   c.     refusing to provide the same training on new products, policies and procedure, particularly after returning from leave;

   d.     refusing to provide Coaching or other assistance in order to assist in improving or   increasing sales in order to meet sales objectives

   e.     intentionally listening to a higher ratio of their calls in order to identify mistakes resulting in discipline;

   f.     the issuance of harsher discipline than others outside the protected categories;

   g.     intentionally targeting those with intermittent leave by creating an environment so hostile so as to force the employee "off the books" either through voluntary termination or onto Short Term Disability Leave, something that removed them from the Miami Call Center's sales objective, and  thus no longer impact their sales figures and those of the Center.

97.     COURET was subjected to all of the aforementioned conduct.

98.     All of the aforementioned was intended to, or had the effect of creating a hostile work environment for COURET, one designed to result in her departure from the work

environment, either due to termination or through taking time off under the Short Term Disability Leave program.

99.     Defendant's written and unwritten policies encouraged management to target disabled employees and/or employees that utilized disability leave and accommodations, based upon its position that employees should not take such protected time off, and that doing so, negatively impacted the Defendants sales.

100.     The Plaintiff's disability was either a motivating factor or a determinative factor in Defendant's conduct towards her.

101.     The Defendant treated other similarly situated employees who were not disabled more favorably.

102.     The Plaintiff was subjected to unwelcome harassment based on and because of her qualified disability.

103.     The Defendants conduct was intended to cause severe reactions and did cause COURET's disabilities to become symptomatic, negatively impacting her ability to work.

104.     The Defendants conduct was intended to result in Plaintiff's decision to leave her employment or be terminated.

105.     The Defendants conduct amounted to harassment which was sufficiently severe or pervasive so as to alter the terms and conditions of COURET'S employment and create a discriminatorily abusive and hostile working environment.

106.     A reasonable person would objectively find the work environment COURET was subjected to as hostile or abusive.

107.     COURET subjectively believed the work environment she was subjected to as hostile and abusive.

108.    The Defendant is either vicariously or directly liable for the hostile work environment created at the Miami Call Center, or directly liable.

109.    The Defendant violated the FCRA in discriminating against COURET by creating a hostile work environment.

110.    The Defendant's stated reasons for its adverse actions were pretext for its substantial motivating factor of discriminating against the Plaintiff due to her disabilities.

111.    As a result of the Defendant's violations, the Plaintiff has suffered damages including severe emotional distress and economic losses.

112.    The Defendant has failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination form the work place and to prevent it from occurring.

113.    As a direct and proximate result of the Defendant's willful knowing and intentional discrimination, the Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress and mental anguish; the Plaintiff has incurred and will continue to incur medical expenses for treatment by health care professionals and for other incidental expenses. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

114.    The Plaintiff seeks an award of general and compensatory damages, reinstatement or front pay, back pay and prejudgment interest.  Additionally, the Plaintiff is entitled to punitive damages for the Defendant's reckless indifference and disregard of her protected rights.

115.    As a further direct and proximate result of the Defendant's violation the Plaintiff has been compelled to retain the services of undersigned counsel.  The Plaintiff will incur and

continued to incur reasonable attorney's fees and costs and therefore requests that her attorney fees be awarded pursuant to the FCRA.

 **WHEREFORE** the Plaintiff prays that judgment be entered in her favor against the Defendant as follows: that the Plaintiff be awarded general and compensatory damages, front-pay or reinstatement, back pay and prejudgment interest; that the Plaintiff be awarded reasonable attorney's fees, costs and other such relief as allowed under Florida law and that the Court deems just and proper.

## COUNT IV-  RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

 116. Plaintiff incorporates by reference paragraphs One (1) through Fifty-One (51) as if fully set forth herein.

 117. The Plaintiff engaged in protected activity when she complained about the treatment she was being subjected to by her supervisors due to her disability, including on March 18, 2015, and April 17, 2015.

 118. After complaining, the Plaintiff was retaliated against by being subjected to adverse employment actions constituting a serious and material change in the terms, conditions or privileges of her employment, including but not limited to:

  a. being denied Coaching in order to improve her sales figures;

  b. being issued disciplinary actions for sales performance after being denied Coaching;

  c. being subjected to unwelcome harassment which included but was not limited to isolation, ridicule, disparate treatment as a result of her managers listening to a higher ratio of her sales calls in order to find mistakes, and being disciplined for sales performance others doing the same thing were not disciplined for doing;

  d. failing to allow reductions of sales objectives while affording others outside the protected class such a reduction;

119.    The protected activity was the but for cause of the harassment and the causal link between the protected expression and the adverse actions; and there is no justifiable reason for the aforesaid conduct.

120.    The retaliatory harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment.

121.    The Defendant treated other similarly situated employees who were not disabled and who had not complained about disparate treatment more favorably.

122.    The Defendant has failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate retaliation form the work place and to prevent it from occurring.

123.    As a direct and proximate result of the Defendant's willful knowing and intentional retaliation, the Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress and mental anguish; the Plaintiff has incurred and will continue to incur medical expenses for treatment by health care professionals and for other incidental expenses; Plaintiff has suffered and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

124.    The Plaintiff seeks an award of general and compensatory damages, reinstatement or front pay, back pay and prejudgment interest.  Additionally, the Plaintiff is entitled to punitive damages for the Defendant's reckless indifference and disregard of her rights under the FCRA.

125.    As a further direct and proximate result of the Defendant's violation the Plaintiff has been compelled to retain the services of undersigned counsel.  The Plaintiff will incur and continued to incur reasonable attorney's fees and costs and therefore requests that her attorney fees be awarded pursuant to the FCRA.

22

**WHEREFORE** the Plaintiff prays that judgment be entered in her favor against the Defendant as follows: that the Plaintiff be awarded general and compensatory damages, front-pay or reinstatement, back pay and prejudgment interest; that the Plaintiff be awarded reasonable attorney's fees, costs and other such relief as allowed under Florida law and that the Court deems just and proper.

## COUNT V-VIOLATION OF THE FAMILY MEDICAL LEAVE ACT: INTERFERENCE

126.    Plaintiff incorporates by reference paragraphs One (1) through Fifty-One (51) as if fully set forth herein.

127.    At all relevant times, the Plaintiff was a covered employee as defined in 29 U.S.C. 2611(2) and was eligible for leave under the FMLA.

128.    At all relevant times, the Plaintiff was a person subject to protection pursuant to the provisions of the FMLA, 29 U.S.C. 2611(2).

129.    As a result of her mental impairments, the Plaintiff suffered from serious medical conditions, which qualified her for leave time and benefits under the FMLA, 29 U.S.C. 2612(a)(1)(D).

130.    The Plaintiff's conditions were serious and required treatment and ongoing care. The conditions further limited her in one or more major life activities; she had a record of and had been diagnosed with these disabilities, and had received treatment for same; and or she was regarded as disabled because of these conditions.

131.    At all relevant times, the Defendant was an eligible employer of the Plaintiff within the meaning of the FMLA, 29 U.S.C. 2611(4).

132.    The Defendant is an employer, which at all times relevant, employed fifty (50) or more employees for at least twenty (20) consecutive work weeks.

133.    The Plaintiff worked for the Defendant for at least twelve (12) months as a full-time employee.

134.    The Plaintiff worked at least 1,250 hours during the course of the last twelve (12) months of her employment preceding the time she took FMLA.

135.    The Plaintiff worked in a location with the Defendant, which employed at least fifty (50) employees within a 75-mile radius.

136.    The Plaintiff had a "serious health condition" as defined by 29 U.S.C. 2611(11) at all times relevant hereto.

137.    The Plaintiff was entitled to medical leave, not to exceed a total of twelve (12) work weeks in a twelve (12) month period of time.

138.    That some or all of the Plaintiff's leave for treatment was FMLA qualifying leave and she was entitled to the protections of the FMLA.

139.    As a result of Plaintiff's qualifying medical conditions, it was likely that she would request FMLA in the future.

140.    The Family Medical Leave Act prohibits covered employers from interfering with, restraining, or denying an employee from exercising any right under the FMLA.   29 USC 2615(a)(1).

141.    The Plaintiff was a qualified employee entitled to FMLA leave due to her medical conditions.

142.    The Defendant's adverse actions interfered with her rights to take FMLA leave, in that it ridiculed and isolated her from colleagues, refused training and assistance on handling calls; required managers to target her by way of intimidation, listening to a higher ratio of sales calls in order to find mistakes,  refusing to modify her sales objectives and issuing several disciplinary

24

actions all of which created a hostile work environment and were intended to cause the Plaintiff not to seek FMLA in the future.

143.    The Defendants actions were related to the exercise or attempted exercise by the Plaintiff to her rights under FMLA and were intentionally done to ensure the Plaintiff and others similarly situated did not use FMLA.

144.    As a direct and proximate result of the Defendant's aforementioned actions and omissions through the conduct of its agents, employees and/or representatives, the Plaintiff has suffered and continues to suffer substantial injury, harm and damages, including but not limited to lost wages and benefits.

145.    As a further and direct proximate result of the Defendant's violation of the FMLA, the Plaintiff has been compelled to retain the services of the undersigned counsel, and thus requests that reasonable attorney's fees and costs be awarded pursuant to 29 U.S.C. 2617(a)(3).

146.    The Defendant interfered with the Plaintiffs' rights guaranteed by the FMLA by using designated FMLA protected leave as a negative factor in its employment decisions and by targeting her for discipline due to her prior use and anticipated future use of FMLA.

147.    The Plaintiff seeks an award of damages including wages, salary and other employment related benefits and compensation denied or lost by her as a result of the violation of the statute, interest on such damages, and additional amount as liquidated damages equal to the sum of the amount of any wages, salary, employment-related benefits and compensation denied or lost to her by reason of the violation of the statute, such equitable relief as may be appropriate, including re-employment, re-instatement, and promotion, reasonable attorney's fees, reasonable expert fees and other such costs in this action pursuant to 29 U.S.C. 2617.

**WHEREFORE** the Plaintiff prays that judgment be entered in her favor against the Defendant as follows: that the Plaintiff be awarded general and compensatory damages, liquidated damages, reinstatement or front pay, back pay and prejudgment interest; that the Plaintiff be awarded reasonable attorney's fees and costs pursuant to 29 U.S.C. 2617 and that the Plaintiff be awarded such other relief that the Court deems just and proper.

**COUNT VI -  VIOLATION OF THE FAMILY MEDICAL LEAVE ACT: RETALIATION**

148.    Plaintiff incorporates by reference paragraphs One (1) through Fifty-One (51) and One Hundred Twenty-Seven (127) through One Hundred Thirty-Nine (1397) as if fully set forth herein.

149.    The Family Medical Leave Act prohibits covered employers from retaliating against an employee from exercising any right under the FMLA.  29 USC 2615(a)(2).

150.    The Plaintiff invoked her rights to FMLA benefits and thus engaged in protected activity when she informed the Defendant of her medical condition, provided the Defendant with a doctor's note certifying her medical condition which established the need for time off for treatment and was approved for such leave by the Defendant.

151.    Thereafter, the Plaintiff was retaliated against and suffered adverse employment decisions when the Defendant ridiculed and isolated her from colleagues, refused training and assistance on handling calls; required managers to target her by way of intimidation, listening to a higher ratio of sales calls in order to find mistakes, refusing to modify her sales objectives and threatening and issuing several disciplinary actions all of which created a hostile work environment.

152.    A reasonable employee would have found the afore-listed actions taken by the Defendant to be materially adverse.

153.    The adverse employment decisions were causally related to the Plaintiffs engagement in statutorily protected activity by invoking her rights to FMLA benefits, in that the actions were in close proximity in time, and there is no justifiable reason for the aforesaid conduct, including her termination.

154.    By targeting the Plaintiff, the Defendant retaliated against her and/or discriminated against her for exercising her rights, or attempting to exercise her rights under the Family Medical Leave Act of 1993, in violation of the anti-discrimination provisions of 105(a) and/or the Department of Labor's anti-retaliation regulation, 29 C.F.R. 825.220(b).

155.    The Defendant intentionally interfered with the Plaintiffs' rights guaranteed by the FMLA by using designated FMLA protected leave as a negative factor in its employment decisions and by targeting her for discipline due to her prior use and anticipated future use of FMLA.

156.    Defendants violations were done in bad faith and display willful, intentional misconduct, and/or gross negligence in that either Defendant had actual knowledge of the wrongfulness or the conduct and the high probability that damage to the Plaintiff would result and, despite that knowledge, intentionally pursued a course of conduct resulting in the Plaintiff's injury and damages, or Defendant's conduct was so reckless and wanting in care that it constitutes a conscious disregard or indifference to the Plaintiff's rights.

157.    As a direct and proximate result of the Defendant's aforementioned actions and omissions through the conduct of its agents, employees and/or representatives, the Plaintiff has suffered and will continued to suffer substantial injury, harm and damages, including but not limited to lost wages and benefits.

158.     As a further and direct proximate result of the Defendant's violation of the FMLA, the Plaintiff has been compelled to retain the services of the undersigned counsel and thus requests that her reasonable attorney's fees and costs be awarded pursuant to 29 U.S.C. 2617(a)(3).

159.     The Plaintiff seeks an award of damages including wages, salary and other employment related benefits and compensation denied or lost by her as a result of the violation of the statute, interest on such damages, and additional amount as liquidated damages equal to the sum of the amount of any wages, salary, employment-related benefits and compensation denied or lost to her by reason of the violation of the statute, such equitable relief as may be appropriate, including re-instatement, and promotion, reasonable attorney's fees, reasonable expert fees and other such costs in this action pursuant to 29 U.S.C. 2617.

**WHEREFORE** the Plaintiff prays that judgment be entered in her favor against the Defendant as follows: that the Plaintiff be awarded general and compensatory damages, liquidated damages, front pay, back pay and prejudgment interest; that the Plaintiff be awarded reasonable attorney's fees and costs pursuant to 29 U.S.C. 2617 and that the Plaintiff be awarded such other relief that the Court deems just and proper.

## JURY TRIAL DEMAND

MARIETTA COURET hereby requests a jury trial on all questions of fact raised in this Complaint.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the Complaint has been filed with the Clerk of Court through CM/ECF on 27th day of June, 2016.

Respectfully submitted,

By: <u>/s/*Lorenzo Williams*</u>

Lorenzo Williams, Esquire (Florida Bar No. 249874)
E-mail: lw@williegary.com
Gary, Williams, Parenti, Watson & Gary, P.L.L.C.
221 S.E. Osceola Street
Stuart, FL 34994
Telephone: (772) 283-8260
Facsimile: (772) 219-3365
Attorneys for Plaintiff Marietta Couret

       and

By: /s/ *Debra S. Nolan*
Debra S. Nolan, Esquire (Florida Bar 638821)
E-mail: debra@gainesnolan.com
Gaines and Nolan
2100 S.E. Hillmoor Drive, Suite 106
Port St. Lucie, Florida 34952
Telephone: (772) 200-4600
Facsimile: (772) 200-4575
Attorneys for Plaintiff Marietta Couret